UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KATHY M. NEUPERT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 3:09-CV-84 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

On February 27, 2009, Plaintiff, Kathy Neupert ("Neupert"), filed her complaint with this Court. On June 22, 2009, Neupert filed her opening brief asking this Court to enter judgment in her favor or to remand this matter to the Commissioner pursuant to 42 U.S.C. § 405(g). On September 8, 2009, Defendant, Commissioner of Social Security, Michael J. Astrue ("Commissioner"), filed his response brief. This Court may issue the following report and recommendation on this motion pursuant to its referral order and 28 U.S.C. § 636(b)(1)(B).

**I.  PROCEDURE**

On February 27, 2009, Plaintiff, Kathy Neupert, filed her complaint with this Court. On June 22, 2009, Plaintiff filed her opening brief asking this Court to enter judgment in her favor or to remand this matter to the Commissioner pursuant to 42 U.S.C. § 405(g). On September 8, 2009, Defendant, Commissioner of Social Security, Michael J. Astrue (Commissioner) filed his response brief. Neupert did not file a reply.

On May 7, 2003, Neupert filed her applications for Supplemental Security Income and Disability Insurance Benefits. Neupert is insured for Disability Insurance Benefits through

1

December 31, 2003. Neupert claims she is entitled to benefits pursuant to Title II of the Social Security Act. See 42 U.S.C. §§ 416(I), 423.

On February 28, 2008, an Administrative Law Judge ("ALJ") denied Neupert's application for benefits. The ALJ found that Neupert had not engaged in substantial gainful activity since December 15, 1998. The ALJ found that Neupert had severe impairments of fibromyalgia, degenerative disc disease, asthma/COPD, depression, and an anxiety disorder. However, the ALJ found that the impairments that Neupert suffers from do not meet the listed impairments in 20 C.F.R. app.1, subpart P, § 404. The ALJ determined that Neupert had the residual functional capacity ("RFC") to lift twenty pounds occasionally and ten pounds frequently, sit for six hours in an eight hour day, and stand for an hour at a time in an eight hour day, stand and walk a total of six hours in an eight hour day. The ALJ also determined that Neupert's RFC does not allow concentrated exposure to pulmonary irritants, more than occasional contact with the public throughout the day, or work with heights or dangerous machinery. The ALJ determined that Neupert was unable to perform any past relevant work. However, the ALJ determined that Neupert could perform jobs that exist in significant numbers in the national economy. As a result of these findings, the ALJ determined that Neupert was not disabled as defined in the Social Security Act and, therefore, was not entitled to benefits.

On March 28, 2008, Neupert requested that the Appeals Council review the ALJ's decision. On January 7, 2009, the Appeals Council denied Neupert's request for review, and as a result, the ALJ's decision became the Commissioner's final decision. 20 C.F.R. § 404.981; Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005).

On February 27, 2009, Neupert filed a complaint in this Court alleging that the ALJ erred

in his decision by failing to award the proper credibility to Neupert's testimony, improperly disregarding evidence of fibromyalgia and carpal tunnel syndrome, and errantly finding that Neupert has an RFC to do light work.

## II. ANALYSIS

### A. Facts

Neupert was forty-nine years old at the time the ALJ denied her claim. She has obtained a GED and has performed past workas a nursing home cook, a certified nurse's aide, and a production factory laborer.

Neupert claims to have suffered from back pain for many years, stemming from an incident that occurred as a teenager when she fell and hurt her hip. Neupert's back pain became worse, and on May 17, 1998, she went to the Elkhart General Hospital for treatment. On September 16, 1998, a radiological exam revealed mild scoliosis[1] of the lumbar spine and "questionable narrowing of the disc of L3-4 and L4-5," as well as spondylolysis[2] of L5 and spondylosis[3] in the lower lumbar region.

In February 1998, Dr. James Haughn began treating Neupert for depression and anxiety with Xanax. Between February 1998 and November 2001, Dr. Haughn prescribed Lortab, Valium, and Soma to Neupert to treat her depression and anxiety. However, on November 21, 2001, Dr. Haughn refused to fill any more of Neupert's prescriptions for Lortab or Valium stating that Neupert was exhibiting drug seeking behavior.

---

[1] Scoliosis is an appreciable lateral deviation in the normally straight vertical line of the spine. Dorland's Illustrated Med. Dictionary, 1181 (26th ed. 1985).

[2] Spondylolysis is a dissolution of the vertebra. Id. at 1239.

[3] Spondylosis is a general term for degenerative changes in the spine due to osteoarthritis. Id.

On August 30, 2003, Dr. Noe Marandet performed a consultative physical examination. In his report, Dr. Marandet noted that Neupert had a normal gait and station, and could stand on her heels and toes. She was able to "squat all the way down and rise up without difficulty." There was some tenderness of the cervical and lumbar spine, some muscle spasm in the neck area, and some trigger points noted in the neck and between the shoulders and the straight-leg raise was positive at twenty degrees on the left. Otherwise, Neupert's examination results were normal.

On September 24, 2003, a state agency physician made an assessment of Neupert's capacity to perform basic occupational functions. He found that Neupert could lift twenty pounds occasionally and ten pounds frequently, and that she could sit, stand, or walk for about six hours in an eight hour day. The state agency physician also found that Neupert could only occasionally climb ladders, balance, stoop, kneel crouch, and crawl, and frequently climb stairs and ramps. In January 2004, another state agency physician affirmed the RFC assessment.

In September 2005, Dr. Kenneth Smith examined Neupert and diagnosed her with fibromyalgia. Dr. Smith noted tenderness in her back, a "slight reduction in all cervical spine range of motion with moderate pain," and a "slight reduction in all lumbar movement with moderate pain." However, strength testing yielded normal results in the hips and peripheral joints. Also, Neupert had a normal gait, could walk heel to toe, perform a normal straight-leg lift, and perform a deep knee bend. Dr. Smith also opined that Neupert's asthma was probably chronic obstructive pulmonary disease ("COPD") as a result of many years of smoking. Dr. Smith recommended home exercises and stretches, a physical therapist, aerobic exercise for treatment rather than narcotics.

On January 5, 2007, Neupert had a consultation exam with Dr. Eric Schreier regarding right elbow pain. X-rays of the right elbow were within normal limits, and an EMG did not show evidence of carpal tunnel syndrome. Dr. Schreier explained that all motor, sensory, and muscle tests in the upper right extremity were within normal limits. Dr. Schreier also noted that Neupert's strength "reveals giveaway."

On January 12, 2007, Dr. Reichenbach filled out a form for food stamp assistance, in which he checked a box indicating that Neupert was "totally unable to work." However, Dr. Reichenbach did not support his conclusion with any explanations in the space provided on the form.

On April 30, 2007, Dr. Jean Perrin examined Neupert generally for evidence of disability. Neupert told Dr. Perrin that she occasionally needs help getting dressed and in the bathroom but is otherwise able to perform the functions of daily living. Dr. Perrin examined Neupert and reported that she was able to walk normally "even without her cane," and that she was walking normally on her heels and toes, but later grabbed her cane and began limping. Dr. Perrin noted that Neupert did not give full effort when testing her range of motion. Moreover, Dr. Perrin noted that Neupert did not have "evidence of active synovitis[4] and no true joint limitation." The doctor noted that Neupert's range of motion was slightly limited in her cervical spine, though she "clearly was not making a full effort." Neupert had a limited range of motion in the lumbar region of the spine, though her straight leg raising test was normal; and there was no tenderness in the spinous processes or paravertebral muscle spasm. Her neurological examination was normal, her hand grip strength was normal, and Neupert could button clothing, pick up coins,

---

[4] Synovitis is the inflammation of a synovial membrane, which is contained in joint cavities, bursae, and tendon sheaths. Id.

and write.  Dr. Perrin concluded that Neupert could perform a job that involved alternately sitting, standing, and walking, and occasional lifting of twenty pounds.  Dr. Perrin also recommended a restriction on all postural activities except occasional ramp and stair climbing, and restricted exposure to pulmonary irritants, unprotected heights, and uneven surfaces.  Dr. Perrin indicated that these limitations were based on "pain only."

On July 13, 2007, Neupert appeared before an ALJ and testified regarding the nature of her pain, medications, and daily activities.  She testified that it was difficult to breathe during strenuous activity and that she had to use inhalers everyday.  She also testified that she needed to be pushed in a wheelchair when shopping.  In addition, Neupert testified that she used a body pillow to prop herself up when she sits because she has problems holding up her neck.  She further testified that she could not hold a knife or pen because of pain and tingling in her hands.

**B. Standard of Review**

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error.  See 42 U.S.C § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhardt, 322 F.3d 912, 915 (7th Cir. 2003).  Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1972).  A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion.  Haynes, 416 F.3d at 626.  An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues.  Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003).  However, an ALJ's legal conclusions are reviewed *de novo*.  Haynes, 416 F.3d at 626.

### C. Neupert's Motion for Summary Judgment

To be entitled to benefits under 42 U.S.C. §§ 423, 1321a, Smith must establish that he was "disabled." See 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments, (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity, (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work, and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920; Briscoe, 425 F.3d at 352. If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404. However, if the impairment is not so listed, the ALJ assesses the claimant's RFC, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of

proof on steps one through four, but the burden shifts to the Commissioner at step five. Id.

Neupert claims that the ALJ erred in his determination that Neupert was not credible, in disregarding evidence of her pain resulting from fibromyalgia, and in finding that she had an RFC to perform light work. This Court will address each of these arguments in turn.

    1. <u>The ALJ's determination that Neupert was not credible is supported by substantial evidence</u>.

Neupert complains that the ALJ erred in his finding that she was not credible. Specifically, Neupert contends that the ALJ disregarded her testimony of extreme pain, as well as failed to assess the credibility of her statements using the required factors, such as evaluating Neupert's daily activities, the severity of her statements about her symptoms, factors that aggravate her symptoms, the effectiveness of medication to treat her symptoms, the effectiveness of other treatment, the measures that Neupert uses to relieve her symptoms, and any other functional restrictions due to her symptoms. Neupert further contends that the ALJ erred in his consideration of Dr. Haughn's comments that Neupert was abusing her prescription medication. This Court finds Neupert's arguments unpersuasive and concludes that the ALJ's credibility determination was properly considered and sufficiently supported.

Because an ALJ is in a special position where he can hear, see, and assess witnesses, his credibility determinations are given special deference, and as a result, his credibility determinations will only be overturned if they are patently wrong. <u>Jens v. Barnhart</u>, 347 F.3d 209, 213 (7th Cir. 2003). "Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed." <u>Prochaska v. Barnhart</u>, 454 F.3d 731, 738 (7th Cir. 2006) (citations omitted). Social Security

8

Ruling 96-7p requires an ALJ to articulate specific reasons in a credibility finding. Golembiewski, 322 F.3d at 915; Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002). An ALJ cannot simply state that an individual's allegations are not credible. Golembiewski, 322 F.3d at 872. However, an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence." Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004) (quoting Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995)).

Despite Neupert's contentions that the ALJ's determination is not supported by any record evidence, the ALJ has grounded his finding that Neupert was less than candid about her limitations with several pieces of evidence. First, the ALJ noted that Neupert behaved suspiciously at her physical examination with Dr. Perrin. In particular, Dr. Perrin noted that Neupert's gait was normal until she realized she was being observed, and then she began to limp and grab for her cane. Next, the ALJ noted that Dr. Haughn thought that Neupert was abusing her prescription medications suggesting that drug dependency, rather than pain, was motivating her use of narcotics. As such, this Court concludes that the ALJ's findings in this regard are supported by evidence in the record.

Neupert also argues that the ALJ did not evaluate her statements according to the factors required by statute. As to this contention, this Court finds that the ALJ has evaluated those factors sufficiently to support his finding that Neupert is not credible. The ALJ discussed Neupert's daily activities, including reclining and watching television, as well as the activities she cannot do, like laundry. He discussed Neupert's claims of pain due to fibromyalgia, and the tingling in her hands due to "borderline carpal tunnel syndrome." Also, the ALJ reiterated Neupert's claims that cold weather and physical exertion aggravated her symptoms. However,

9

the ALJ did not find Neupert's statements convincing because of the results of her physical examinations in which she was able to grip normally and walk normally. Rather, the ALJ found Dr. Perrin's and Dr. Haughn's statements persuasive and based his credibility determination on the results of their examinations because they were consistent with other doctors' opinions. As a result, this Court concludes that the ALJ properly analyzed Neupert's credibility under the relevant discretionary factors.

Because the ALJ's credibility determination is substantially supported by evidence in the record and was properly considered, this Court affirms that determination.

> 2. The ALJ did not disregard evidence of fibromyalgia and carpal tunnel syndrome.

In addition, Neupert contends that the ALJ disregarded two entire lines of evidence regarding fibromyalgia and carpal tunnel syndrome. Specifically, Neupert contends that the ALJ ignored all reports of muscle spasms and tender trigger points related to a diagnosis of fibromyalgia. In addition, Neupert also argues that the ALJ ignored a diagnosis of carpal tunnel syndrome, which Neupert argues is supported by evidence of trouble gripping small items and numbness in her fingers and hands.

An ALJ may not ignore an entire line of evidence that is contrary to the ruling. Golembiewski, 322 F.3d at 917. A reversal or remand is required when the ALJ fails to articulate reasons for rejecting entire lines of evidence. Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994). However, an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence." Rice, 384 F.3d at 370.

While an ALJ is not required to provide an evaluation of every piece of testimony, the ALJ in this case has discussed Neupert's claims of pain due to fibromyalgia and carpal tunnel

10

syndrome. First, the ALJ discussed Neupert's personal testimony regarding fibromyalgia and carpal tunnel syndrome from her testimony at the hearing in which Neupert testified that she suffered from pain and weakness in her muscles and had tingling and numbness in her hands. Next, he discussed Dr. Marandet's diagnosis of fibromyalgia, noting that the doctor based his diagnosis upon the presence tender trigger points and mild muscle spasms. However, the ALJ found that Dr. Marandet's diagnosis was consistent with a finding that Neupert could perform light work including light lifting, walking, standing and sitting. Then, the ALJ considered the diagnosis of Dr. Smith who diagnosed Neupert with fibromyalgia based on scattered tender trigger points, though the doctor did not find any evidence of carpal tunnel syndrome. The ALJ found Dr. Smith's opinion was also consistent with his finding that Neupert could perform light work. After considering all of this evidence, the ALJ concluded that Neupert could perform light work.

Though the ALJ is not required to submit a written evaluation of every piece of evidence, this Court concludes that the ALJ did consider Neupert's claims of pain from fibromyalgia and carpal tunnel syndrome and factored that evidence into his RFC finding. As such, this Court finds the ALJ did not disregard substantial evidence in support of Neupert's claimed limitations but, rather, concluded and incorporated the evidence into his ultimate RFC finding.

3. <u>The ALJ did not err in finding that Neupert had the RFC to perform light work.</u>

Finally, Neupert contends that the ALJ's determination that she retained an RFC to perform light work is unsupported by the evidence. Specifically, she contends that there was not enough medical evidence in the record to establish Neupert's ability to perform the activities

11

indicated in the ALJ's RFC finding. She also argues that her testimony did not support ALJ's RFC finding. This Court finds Neupert's arguments unpersuasive, however, concluding, instead, that the ALJ noted substantial evidence in support of his RFC finding.

As stated above, an ALJ must build a logical bridge from the evidence to his conclusion, just as the ALJ has done in the present case. See Haynes, 416 F.3d at 626. The ALJ found that Neupert had the RFC to perform light work, including the capacity to lift ten pounds frequently and twenty pounds occasionally. He also concluded that Neupert could alternately sit and stand throughout an eight hour work day, standing and walking for a total of six hours and sitting for a total of six hours. The ALJ supported his findings with evidence in the record. For example, the ALJ considered persuasive Dr. Perrin's findings that Neupert could walk normally without a cane, she could walk normally on her heels and toes, and she could grip with her hands normally. The ALJ stated that his RFC finding was consistent with the evidence from Dr. Perrin's examination results and that the doctor's opinion was given the most weight. The ALJ also considered the results of several other doctors' examinations, including Dr. Haughn and Dr. Smith stating that he found his finding to be consistent with the results of their examinations. Thus, the ALJ has supported his RFC finding with substantial medical evidence in the record, contrary to Neupert's contention.

Neupert also makes a handful of other contentions regarding the ALJ's RFC finding. For instance, Neupert contends that the ALJ did not consider her testimony in his RFC finding. As stated above, however, the ALJ did not find Neupert's testimony to be credible, and thus was not entitled to much weight. She also argues in cursory fashion that the ALJ did not consider any mental impairments, elbow pain, and neck weakness. However, the ALJ noted that Neupert's

mental impairments did not impede her ability to perform light work or socialize on a limited basis. The ALJ also noted that Dr. Smith's examination showed that there was nothing to support Neupert's allegations of numbness or weakness in the hands that might affect grip strength. This Court finds that the ALJs opinion sufficiently addressed these issues raised briefly by Neupert.

Thus, this Court concludes that the ALJ's RFC finding is sufficiently supported by the evidence and that the ALJ has built a "logical bridge for the evidence from the evidence to his conclusion." Haynes, 416 F.3d at 626. Therefore, this Court affirms the ALJ's findings.

### III. CONCLUSION

This Court concludes that the ALJ's credibility finding is supported by substantial evidence, the ALJ properly considered evidence of Neupert's fibromyalgia and carpal tunnel syndrome, and the ALJ's RFC finding was supported by substantial evidence. Therefore, this Court **RECOMMENDS** that Neupert's motion for remand should be **DENIED** [Doc. No. 1].

> **NOTICE IS HEREBY GIVEN that within ten (10) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER**.

**SO ORDERED.**

**Dated this 4th Day of November, 2009.**

S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge